## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

OTIS A. BROWN,                          :
AIS 234410,

                                       :

        Petitioner,

                                         :

vs.                                     :           CA 06-0559-KD-C

                                         :

KENNETH JONES,

                                         :

        Respondent.

## REPORT AND RECOMMENDATION

Otis A. Brown, a state prisoner presently in the custody of the respondent, has petitioned this Court for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Petitioner is challenging the validity of his February 18, 2004 attempted murder conviction in the Circuit Court of Mobile County, Alabama. On March 26, 2004, Brown was sentenced to life imprisonment. Petitioner's conviction and sentence were affirmed on appeal by the Alabama Court of Criminal Appeals on January 7, 2005, *Brown v. State*, 925 So.2d 1009 (Ala.Crim.App. 2005) (table), and that court entered a certificate of final judgment of affirmance on March 2, 2005 (Doc. 8, Exhibit G). Petitioner filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama collaterally attacking his conviction and sentence on May 3, 2005. The trial court

summarily dismissed the petition on September 16, 2005 and on January 27, 2006, the Alabama Court of Criminal Appeals affirmed the dismissal of Brown's Rule 32 petition. Petitioner's application for rehearing was overruled by the Alabama Court of Criminal Appeals on February 17, 2006 and, on May 12, 2006, the Alabama Supreme Court denied Brown's petition for writ of certiorari. The Alabama Court of Criminal Appeals issued the final judgment of affirmance on May 15, 2006.

In his petition before this Court, filed September 12, 2006 (Doc. 1, at 13), Brown raises the following grounds which he claims entitle him to relief:

(1) he was the object of unduly and impermissibly suggestive pretrial and trial identification procedures which tainted his identification;

(2) trial counsel was ineffective (a) in interfering with his Fifth Amendment right to testify at trial; (b) in failing to move for a mistrial after the trial court granted a directed verdict on the robbery charge; and (c) in failing to object to the material variance in the indictment alleging attempted murder pursuant to Alabama Code § 13A-6-2(a)(1) and the proof at trial pursuant to § 13A-6-2(a)(3);

(3) appellate counsel was ineffective (a) in failing to challenge the trial court's ruling which admitted collateral bad act evidence; (b) in failing to

2

challenge the trial court's denial of his motion for directed verdict on the attempted murder charge; and (c) in failing to pursue his claim on direct appeal to the Alabama Supreme Court pursuant to federal law; and

(4) the trial court was without jurisdiction to render a judgment or impose sentence because of the material variance in the indictment alleging attempted murder pursuant to Alabama Code § 13A-6-2(a)(1) and the proof at trial pursuant to § 13A-6-2(a)(3).

The respondent has admitted that petitioner has exhausted his state court remedies. (Doc. 8, at 8) Respondent does claim, however, that this Court is procedurally barred from reaching the merits of the first two grounds of the petition and, with respect to grounds two through four, that Brown has failed to establish that the state court's decision regarding these issues was contrary to federal law or an unreasonable application of the law to the facts of his case. This case is ripe for a decision by this Court.

This cause is before the Court on the petition and respondent's answer, with attachments. A careful review of the record has been completed and it is determined that it contains sufficient facts upon which the issues under consideration may be properly resolved. Therefore, no evidentiary hearing is required.

## FINDINGS OF FACT

1.      During the November 2003 session of the Mobile County Grand Jury, petitioner was charged, in separate indictments, with the attempted murder and robbery of Ralph Houston. (*See* Doc. 9, Exhibit A, Attempted Murder Indictment) The attempted murder indictment reads, in relevant part, that "Otis Alonzo Brown . . . did, with the intent to cause the death of **Ralph Houston,** a violation of § 13A-6-2 of the Code of Alabama, attempt to cause the death of **Ralph Houston,** by **shooting him with a gun,** in violation of § 13A-4-2 of the Code of Alabama[.]" (*Id.* (emphasis in original))

2.      During the trial, Therios Triplett testified that on June 15, 2003 three men in a car asked him if he had any drugs and when he replied in the negative the men pulled guns on him and rifled through his pockets. (*See* T.T. 39-43) Triplett identified Brown as one of the three assailants. (*See id.* at 41-42) Triplett then watched as the men drove up to Houston, who was on his bicycle, and shot the victim. (*Id.* at 44-45) Houston identified Brown as the person who shot him in the back on June 15, 2003. (T.T. 75-77) The wound rendered Houston a paraplegic. (T.T. 30)

3.      That same day, Demarkies Wiggins was told, at gunpoint, to

empty his pockets by the same three men. (T.T. 110-111)[1] According to Wiggins, Brown remained in the car while he was held at gunpoint by Bernard Rancher, Brown's brother. (*Id.* at 111-112 & 116)

4.      Officer David Evans spoke to Triplett on January 29, 2004 and presented him with a photo spread; Triplett picked Brown's photo from the spread. (T.T. 143-146) Detective Richard Chenoweth showed Houston a photo spread on June 18, 2003, three days after the shooting; the victim identified Brown as his assailant. (T.T. 150 & 165)[2] Thomas Stiles, an investigator with the District Attorney's office, showed Wiggins a photo spread on February 2, 2004; Wiggins selected Brown's picture from the photographs presented to him. (T.T. 191-192)[3]

5.      Several witnesses, including petitioner's girlfriend, supplied Brown with an alibi for the date in question. (T.T. 197-242) These witnesses

---

[1]      Presumably because of a change in court reporters, the trial transcript restarts at record page 1 at several different junctures. To maintain consistency for purposes of this report and recommendation, the undersigned has manually renumbered the pages of trial testimony to eliminate all breaks in the numbering.

[2]      Chenoweth testified that Brown's name came to his attention early in his investigation of the crime and that he spoke with Houston in the hospital on June 17, 2003 and verified that Brown was the assailant before he created the photo spread and showed it to the victim on the eighteenth of June. (*See* T.T. 162-163)

[3]      Wiggins failed to pick out Brown's picture when shown this same photo spread on June 18, 2003. (T.T. 182)

testified that Brown never left the home of his girlfriend, Lakesha Nodd, during the early and late evening of June 15, 2003. (*See id*.)

6.     The trial court granted Brown's motion for a directed verdict of acquittal on the robbery charge (T.T. 249); however, it denied Brown's motion for a directed verdict of acquittal on the attempted murder charge (*see, e.g.,* T.T. 268).

7.     The petit jury found Brown guilty of the attempted murder of Ralph Houston. (T.T. 291; *see also* T.T. 291-292 (jury was polled regarding its guilty verdict))

8.     Brown was sentenced to life imprisonment on March 26, 2004. (Doc. 9, Exhibit A, Sentencing Transcript, at 6; *see id.* ("I would just like to say, Your Honor, that I'm falsely accused. It was righteously my brother and I don't know how I got involved in all of this . . . ."))

9.     Petitioner filed a direct appeal from his conviction and sentence in the Alabama Court of Criminal Appeals. (*See* Doc. 8, Exhibit B) That court affirmed Brown's conviction and sentence by memorandum opinion. (Doc. 8, Exhibit D)

> The evidence adduced at trial indicates that, on June 15, 2003, Brown, his brother, and a third man were riding around in an automobile and approached Demarkies Wiggins. Wiggins was riding his bicycle when the three men approached him, at

first asking for drugs, then leaving him alone, only to return to rob him at gunpoint. When the three left, Wiggins decided to go warn some friends about the three men. On the way, someone told him that his brother, Ralph Houston, had been shot, and Wiggins went home to telephone his mother.

Shortly after the three men left Wiggins, they approached Therios Triplett and his female friend. The men first asked Triplett whether he had any drugs and, upon receiving a negative response, the men robbed Triplett and his friend at gunpoint. The men left the scene of that robbery and proceeded down the street. Triplett saw that the men were approaching Houston, who was riding his bicycle, and Triplett yelled to Houston to be careful. The three men stopped close to Houston and spoke to him. Houston tried to get off of his bicycle and run, but one of the men in the car exited the car and shot Houston as he attempted to run away.

Houston testified that Brown was the man who pulled the trigger and shot him in the back. As a result of the shooting, Houston was left a paraplegic.

On appeal, Brown argues that the trial court erred by denying his motion to suppress three photographic line-up identifications and the subsequent in-court identifications. Specifically, Brown argues that each of the witnesses identified Brown from the photographic line-up only after having seen the same photograph of Brown on television as a fugitive wanted in the shooting. Brown's argument is founded on the allegation that each eyewitness's account of the events in question was unreliable. Specifically, he alleges that each witnesses's account is unreliable and, therefore, the only way they could have recognized Brown in the photographic line-up was due to having seen "the exact same photograph on television as was shown to [them] in the photo array." (Appellant's brief, p. 11.) Brown bases his claim of unreliability on the following facts: the victim and one eyewitness saw Brown's photograph on television; the other eyewitness, the victim's brother, did not see the

7

photograph on television, but did not tell law enforcement officers on the night of the shooting that he had recognized the shooter; and two eyewitnesses, who were brothers, reviewed a photographic line-up wherein the photographs were in the same order. Brown made these same arguments in his motion to suppress and the hearing thereon.

In Blackmon v. State, 487 So.2d 1022 (Ala. Crim. App. 1986), this Court stated:

> [T]he required inquiry is two-pronged. The first question is whether the initial identification procedure was unnecessarily or impermissibly suggestive. If it is found to have been so, the court must then proceed to the question whether the procedure found to be . . . unnecessarily or impermissibly suggestive was so conducive to irreparable mistaken identification or had such a tendency to give rise to a very substantial likelihood of irreparable misidentification that allowing the witness to make an in-court identification would be a denial of due process.

487 So.2d at 1025.

In Ex parte Johnson, 620 So.2d 709 (Ala. [1993]) . . ., the Alabama Supreme Court stated:

> Pretrial identifications are to be set aside on grounds of prejudice only if the pretrial identification procedure is so suggestive as to give rise to a substantial likelihood of misidentification. The totality of the circumstances surrounding the out-of-court identification need be analyzed only when the pretrial procedures used appear to have been unnecessarily or impermissibly suggestive.

620 So.2d at 712.

.     .     .

Initially, we note that the fact that the victim and one of the eyewitnesses saw a photograph of Brown on television prior to their identifying him in a photographic line-up does not necessarily affect the level of suggestiveness present in the line-up. The fact that the two saw a photograph of Brown on television prior to the line-up and the fact that the victim's brother did not immediately tell law enforcement that he knew the shooter are not relevant to the identification procedure employed by law enforcement. Rather, those two occurrences concern the totality of the circumstances surrounding the out-of-court identification, a factor we do not consider unless the pretrial identification procedure itself is determined to have been unnecessarily or impermissibly suggestive.

Additionally, to the extent that Brown takes issue with the length of time between the crime and the photographic line-up, we note that this fact generally is not considered in the initial determination of whether the initial identification procedure was unnecessarily or impermissibly suggestive. Rather, if a pretrial identification procedure has been held to be unnecessarily or impermissibly suggestive, we must then evaluate whether the in-court identification of the defendant by the witness has a basis independent of the pretrial identification. It is at that point that we consider the length of time between the crime and the photographic line-up.

Finally, the fact that two eyewitnesses, who were brothers, viewed the same photographic array does not render the array impermissibly suggestive. As Brown admits in his brief, the two testified that they had never discussed the array or the identity of the shooter with each other. Brown expresses a clear disdain for the two eyewitnesses' rendition of the facts; however, any judgment as to their credibility was to be made by the factfinder – the jury – not the court.

9

The photographic array is not in the record before us. Although Brown makes a vague reference in his motion to suppress to an "unduly suggestive line-up, identification, show-up or confrontation," very little testimony during the hearing on the motion to suppress concerned the actual presentation of the photographic line-up to the witnesses. Brown did not argue that the photographic line-up itself was suggestive; rather, he argued that the photographic line-up was not timely presented to two of the witnesses and that the televised photograph influenced two of the witnesses. As stated above, before the timing of the line-ups or the televised photograph can be relevant, Brown must first have established that the photographic line-up was suggestive. For the reasons stated below, we hold that he did not and, as he did not make a threshold showing of suggestiveness, we do not address the remainder of his contentions on appeal.

Detective Chenoweth testified that, three days after the shooting, he approached the shooting victim, Houston, with the same photographic line-up as had been used with Wiggins and Triplett. Detective Chenoweth testified that he made the photographic line-up. He testified that he found pictures of people with similar facial hair, hair, height, and weight. The backgrounds of the photographs were "match[ed] up . . . to be the same." (R. 35.) When Detective Chenoweth presented the line-up to Houston, he told Houston that the person who shot him may or may not have been in the line-up. Houston picked Brown's picture from the line-up "in a matter of seconds." (R. 37.)

Therios Triplett, the first robbery victim, testified that, some seven months after the robbery, he was shown a photographic line-up consisting of six photographs. Sergeant David Evans testified that the line-up consisted of six photographs of people with similar characteristics, including age, race, and gender. Sergeant Evans told Triplett that the person who robbed him may or may not have been in the line-up. Triplett picked Brown's photograph from the line-up after "a

few seconds." (R. 18.)

Demarkies Wiggins, the second robbery victim and brother of the shooting victim, testified that he was shown a photographic line-up some seven to eight months after the robbery. He did not remember how many photographs were present. Detective Richard Chenoweth testified that he showed the same photographic line-up to Wiggins at the hospital on the same night that he showed it to Houston. He also testified that he "went through the same proper protocol" prior to showing the line-up to Wiggins. However, Wiggins was "irritable [and] agitated" over the state of his brother (C. 56) [and] did not select a suspect from the line-up on that occasion. Seven to eight months later, Detective (sic) Thomas Stiles showed the photographic line-up to Wiggins, and Wiggins "looked at it for approximately a couple of minutes" before picking Brown's photograph out of the line-up.

Nothing in the record before us indicates that the photographic line-ups were unnecessarily or impermissibly suggestive. Therefore, we do not reach a point where the timeliness of the presentation of the line-ups, or Brown's photograph on television, becomes relevant.

Moreover, we note that, as for the three in-court identifications of Brown as the perpetrator, although Houston saw Brown's picture on television prior to identifying him, Houston also testified that he had known Brown for years from the neighborhood. Additionally, Triplett testified that he "got a good look at" Brown when he exited the car to rob his female friend. He testified that there was no doubt in his mind that Brown was the man who had robbed them and was the man in the photographic line-up. Finally, although Wiggins was not shown the line-up until several months after the robbery, Wiggins, too, knew Brown from the neighborhood prior to the robbery. When an in-court identification of the accused is shown to have a basis independent of any pre-trial identification, then it is correctly received into evidence. Because the in-court

11

identifications in this case had bases independent of the pre-trial identification, the in-court identifications were properly admitted.

For the reasons stated above, the judgment of the trial court is affirmed.

(*Id*. at 1-7 (most internal citations and quotation marks omitted; footnote omitted)) Brown's application for rehearing (Doc. 8, Exhibit E) was overruled by the Alabama Court of Criminal appeals on February 11, 2005 (Doc. 8, Exhibit F). On March 2, 2005, a certificate of final judgment of affirmance was entered by the Alabama Court of Criminal Appeals. (Doc. 8, Exhibit G)[4]

10.     Brown filed a Rule 32 petition in the Circuit Court of Mobile County, Alabama collaterally attacking his conviction and sentence on May 3, 2005. (Doc. 8, Exhibit K) In his brief in support of the Rule 32 petition, Brown asserted that he was deprived of his constitutional right to effective assistance of trial and appellate counsel and that the trial court was without jurisdiction to render judgment or impose sentence because of a material variance in the indictment allegations and the proof offered at trial. (Doc. 8, Exhibit H, MEMORANDUM AND ATTACHMENTS TO PETITION FOR

---

[4]     The record contains a March 9, 2005 letter to Brown from his appellate attorney, Robert A. Ratliff, Esquire, advising him of the following: "You have 14 days from the denial of the rehearing application to file a Writ of Certiori (sic). I see no grounds for a writ of Certiori (sic) based upon these denials, but you can file a writ yourself, if you would like to take those steps." (Doc. 8, Exhibit H, March 9, 2005 Letter)

POST-CONVICTION RELIEF PURSUANT TO RULE 32, A.R.CR.P.)

11.     On September 16, 2005, the trial court entered the following

order denying Brown's Rule 32 petition:

> Petitioner seeks relief under Rule 32 alleging that the US Constitution requires a new trial and that the court was without jurisdiction to impose the sentence.

> Petitioner's claim of constitutional violations are precluded because those allegations could have been raised at trial and on appeal. Rule 32.2(a)(3), (a)(5).

> Petitioner's claims of ineffective assistance of trial and appellate counsel fail under both *Strickland v. Washington* and *Brooks v. State*, 2005 Ala.Crim.App. Lexis 94. In order to establish an ineffective assistance of counsel claim the Petitioner must show (1) that counsel's performance was deficient, and (2) that he was prejudiced as a result of the deficient performance. *Strickland v. Washington*, 466 US 688 (1984). Moreover, establishing an ineffective assistance of counsel claim, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. *Id.,* 694. "When a Defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the fact-finder would have had reasonable doubt respecting guilt. *Id*.

> In *Brooks v. State*, Petitioner alleged the ineffective assistance of appellate counsel. Just as in this case where appellate counsel was not called to testify, in *Brooks* appellate counsel was not asked whey (sic) she declined to raise "specific issues" in her appellate brief. *Id*. In that case, the evidence before the court was that appellate counsel testified, "Based on her experience she believed that it was best to raise only those claims on appeal that were meritorious and not to use the 'scattergun approach' used by some attorneys." *Id.,* 21. The

*Brooks* court did not find that the failure to raise every possible issue amounted to ineffective assistance of appellate counsel. "Where the record is unclear--either because an issue was not addressed or because counsel could not recall--the Court will presume that counsel acted in a manner consistent with the requirements of the Sixth Amendment." *Id*. Thus, Petitioner's claim of ineffective assistance of appellate counsel fails.

Petitioner's claim of lack of jurisdiction fails because it lacks specificity required under Rule 32.6. Petitioner does not say what issue should have gone to the Supreme Court and also due to the failure to state a claim for which relief can be granted under Rule 32.7.

Accordingly, this Court is authorized summarily to dismiss the petition without an evidentiary hearing or a response from the State for having raised no issue of material fact or law, Rule 32.7(d). The petition is dismissed under Rule 32.7.

(Doc. 8, Exhibit H, September 16, 2005 ORDER)

12.    Petitioner appealed the trial court's summary dismissal of his Rule 32 petition to the Alabama Court of Criminal Appeals. (Doc. 8, Exhibit I) The Alabama Court of Criminal Appeals affirmed the trial court's dismissal of Brown's Rule 32 petition by memorandum opinion entered on January 27, 2005. (Doc. 8, Exhibit K)

## I.

Brown argues that both his trial and appellate counsel were ineffective.

[T]o prevail on an ineffective assistance of counsel claim, a defendant must meet the two-pronged test set out by

Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

The performance component outlined in Strickland is an objective one: that is, whether counsel's assistance, judged under prevailing professional norms was reasonable considering all the circumstances. Once a defendant has identified the specific acts or omissions that allegedly were not the result of reasonable professional judgment on counsel's part, the court must determine whether those acts or omissions fall outside the wide range of professionally competent assistance.

When reviewing a claim of ineffective assistance of counsel, we indulge a strong presumption that counsel's conduct was appropriate and reasonable.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was

15

unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

And even if an attorney's performance is determined to be deficient, the petitioner is not entitled to relief unless it is also established that there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

In an ineffective assistance of counsel claim, the burden is on the claimant to show that his counsel's assistance was ineffective.

Here, Brown has failed to meet the two-pronged test required by <u>Strickland</u> to prevail on an ineffective assistance of counsel claim. Brown has failed to prove that his counsel's performance was deficient as well as failing to prove how that alleged deficiency prejudiced his defense. Brown's claims are merely bare allegations that do not describe how his trial and appellate counsel's conduct was deficient nor do they describe how he was prejudiced by such conduct. Moreover, claims of ineffective assistance of counsel are non-jurisdictional. Because

16

Brown had different counsel at trial and on appeal, his claims of ineffective assistance of trial counsel should have been raised on direct appeal, but were not. Thus, they are precluded from appellate review.

Brown properly raises several claims of ineffective assistance of appellate counsel. As to his contention regarding collateral-act evidence, this claim could not have properly raised on appeal because, as Brown notes in his petition, it was not raised at trial. (C. 19, 20). Therefore, because it was not properly preserved for appellate review, it would have been futile for counsel to raise this issue on appeal. Brown's argument that his appellate counsel was ineffective for allegedly failing to raise the trial court's error of denying his motion for a new trial must also fail. An attorney's decision not to raise a particular argument regarding the evidence is not to raise a particular argument regarding the evidence is not an indication that the attorney's performance fell below an acceptable professional standard. Lastly, Brown argues that his appellate counsel was ineffective for failing to petition the Alabama Supreme Court for certiorari review. It is well settled that a criminal defendant is not entitled to a discretionary appeal to the Alabama Supreme Court. Therefore, appellate counsel cannot be ineffective for failing to file a discretionary appeal.

## II.

Brown claims that "there is a fatal variance in the indictment's allegation that Mr. Brown committed attempted murder pursuant to 13A-6-2(a)(1), Ala.Code (1975) and the state's proof offered at trial showing that Mr. Brown committed attempted murder pursuant to § 13A-6-2(a)(3), Ala.Code." There is no merit to this claim. The record in Brown's direct appeal indicates that Brown shot the intended victim in the back as he attempted to run away. Contrary to Brown's contention, the evidence at trial established the offense of attempted intentional murder, as alleged in the indictment. Accordingly, Brown is entitled to no relief as to this claim.

17

III.

Rule 32.7(d), Ala.R.Crim.P., authorizes the trial court to summarily dismiss a petitioner's Rule 32 petition "[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief under this rule and that no purpose would be served by any further proceedings, the court may either dismiss the petition or grant leave to file an amended petition." As discussed above, Brown's claims are precluded from appellate review. Thus, summary disposition was appropriate.

Based on the foregoing, the judgment of the trial court is affirmed.

(*Id.* at 2-7 (most internal citations and quotation marks omitted; footnotes omitted)) Petitioner's application for rehearing was overruled on February 17, 2006 (Doc. 8, Exhibit M) and his petition for writ of certiorari to the Alabama Supreme Court was denied on May 12, 2006 (Doc. 8, Exhibit O). A certificate of final judgment of affirmance was issued by the Alabama Court of Criminal Appeals on May 15, 2006. (Doc. 8, Exhibit P)

## **CONCLUSIONS OF LAW**

A.     **Procedural Default Doctrine**.

1.     In *Coleman v. Thompson*, 501 U.S. 722, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991), the Supreme Court stated that it would "not review a question of federal law decided by a state court if the decision of that court

rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Id.* at 729, 111 S.Ct. at 2553-2554. This rule applies whether the state law ground is procedural or substantive. *Id.* at 729, 111 S.Ct. at 2554. The doctrine applies to bar federal habeas review when a state court declines to address a petitioner's federal claims because the petitioner fails to meet a state procedural requirement. *Id*. at 729-730, 111 S.Ct. at 2554; *see also Wainwright v. Sykes*, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) (federal courts must honor legitimate state trial and appellate procedural rules when enforced by state courts and must decline to review on the merits claims that the state treats as barred absent a showing of cause for non-compliance with such rules and resulting prejudice); *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir.) ("Pursuant to the doctrine of procedural default, a state prisoner seeking federal habeas corpus relief, who fails to raise his federal constitution[al] claim in state court, or who attempts to raise it in a manner not permitted by state procedural rules is barred from pursuing the same claim in federal court absent a showing of cause for and actual prejudice from the default."), *cert. denied sub nom. Alderman v. Thomas*, 513 U.S.1061, 115 S.Ct. 673, 130 L.Ed.2d 606 (1994). "In these cases, the state judgment rests on independent and adequate state procedural grounds." *Coleman*, 501

U.S. at 730, 111 S.Ct. at 2554 (citations omitted).

2.     The application of the independent and adequate state ground doctrine in the habeas context is grounded in concerns of federalism and comity. *Id.*

> Without the rule, a federal district court would be able to do in habeas what this Court could not do on direct review; habeas would offer state prisoners whose custody was supported by independent and adequate state grounds an end run around the limits of this Court's jurisdiction and a means to undermine the State's interest in enforcing its laws.

*Id.* at 730-731, 111 S.Ct. at 2554.

3.     An additional consideration comes to the fore when the independent and adequate state ground supporting a petitioner's custody is a state procedural default. *Id.* at 731, 111 S.Ct. at 2554. The Supreme Court has long held

> that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims.    (citations omitted)   This exhaustion requirement is also grounded in principles of comity; in a federal system, the States should have the opportunity to address and correct alleged violations of state prisoners' federal rights.
>
> .     .     .
>
> [A] habeas petitioner who has failed to meet the

20

State's procedural requirements for presenting his federal claims has deprived the state courts of an opportunity to address those claims in the first instance.  A habeas petitioner who has defaulted his federal claims in state court meets the technical requirement for exhaustion; there are no state remedies any longer "available" to him. (citations omitted)   In the absence of the independent and adequate state ground doctrine in federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court.   The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.

*Id.* at 731, 732, 111 S.Ct. at 2554-2555, 2555.

4.     In the habeas context, federal courts are to "presume that there is no independent and adequate state ground for a state court decision when the decision 'fairly appears to rest primarily on federal law, or to be interwoven with the federal law, and when the adequacy and independence of any possible state law ground is not clear from the face of the opinion.'"  *Id.* at 735, 111 S.Ct. at 2557 (quoting *Michigan v. Long*, 463 U.S. 1032, 1040-1041, 103 S.Ct. 3469, 3476-3477, 77 L.Ed.2d 1201 (1983)); *see Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989) ("[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and

21

expressly' states that its judgment rests on a state procedural bar.").  In all other cases, the presumption is not applicable.  *See Coleman*, 501 U.S. at 739, 111 S.Ct. at 2559.  In *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), the Supreme Court held that the *Harris v. Reed* presumption is inapplicable to a claim that is never presented to the state courts.  *Id.* at 299, 109 S.Ct. at 1069 ("The rule announced in *Harris v. Reed* assumes that a state court has had the opportunity to address a claim that is later raised in a federal habeas proceeding.").    Moreover, the presumption "looks through" unexplained orders to the last reasoned decision.  *Ylst v. Nunnemaker*, 501 U.S. 797, 804, 111 S.Ct. 2590, 2595, 115 L.Ed.2d 706 (1991).

> Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.  If an earlier opinion "fairly appear[s] to rest primarily upon federal law," *Coleman*, 501 U.S., at 740, 111 S.Ct., at 2559, we will presume that no procedural default has been invoked by a subsequent unexplained order that leaves the judgment or its consequences in place.  Similarly where . . . the last reasoned opinion on the claim explicitly imposes a procedural default, we will presume that a later decision rejecting the claim did not silently disregard that bar and consider the merits.

501 U.S. at 803, 111 S.Ct. at 2594.  Also, the presumption may not be applied

22

in cases in which the state court opinion did not, at a minimum, discuss the federal grounds at issue." *Tower v. Phillips*, 7 F.3d 206, 211 (11th Cir. 1993) ("*Coleman* and *Ylst* lead us to conclude that we may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of this case. In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar."). Finally, "where a state court has ruled in the alternative, addressing both the independent state procedural ground and the merits of the federal claim, the federal court should apply the state procedural bar and decline to reach the merits of the claim." *Alderman v. Zant, supra*, 22 F.3d at 1549.

5.      When a petitioner has procedurally defaulted a claim, a federal court is barred from reaching the merits of that claim unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim[] will result in a fundamental miscarriage of justice." *Coleman, supra*, 501 U.S. at 750, 111 S.Ct. at 2565.  The cause and prejudice standard applies "uniformly to all independent and adequate state procedural defaults." *Id.* at 750-751, 111 S.Ct. at 2565.

> In procedural default cases, the cause standard requires the petitioner to show that

"some objective factor external to the defense impeded counsel's efforts" to raise the claim in state court. (citation omitted). Objective factors that constitute cause include "'interference by officials'" that makes compliance with the state's procedural rule impracticable, and "a showing that the factual or legal basis for a claim was not reasonably available to counsel." (citation omitted). In addition, constitutionally "[i]neffective assistance of counsel . . . is cause." (citation omitted). Attorney error short of ineffective assistance of counsel, however, does not constitute cause and will not excuse a procedural default. (citation omitted). Once the petitioner has established cause, he must show "'actual prejudice' resulting from the errors of which he complains." (citation omitted).

Federal courts retain the authority to issue the writ of habeas corpus in a further, narrow class of cases despite a petitioner's failure to show cause for a procedural default. These are extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime. We have described this class of cases as implicating a fundamental miscarriage of justice. (citation omitted).

*McCleskey v. Zant*, 499 U.S. 467, 493-494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991).

6.    In his answer, respondent asserts that Brown's identification claim is procedurally defaulted under *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) ("[I]n order to exhaust state remedies as

24

to a federal constitutional issue a prisoner is required to file a petition for discretionary review in the state's highest court raising that issue, if discretionary review is part of the appellate procedure in the state.") due to petitioner's failure to seek certiorari review in the Alabama Supreme Court following the Alabama Court of Criminal Appeals affirmance of his conviction and sentence and overruling of his application for rehearing (*see* Doc. 8, at 9 ("This issue was raised in the state court on direct appeal in the Alabama Court of Criminal Appeals but was not raised in a petition for writ of certiorari to the Alabama Supreme Court. This claim is due no review or relief on federal habeas review because it is procedurally defaulted pursuant to O'Sullivan v. Boerckel, 526 U.S. 838 (1999)."). In addition, respondent contends that this Court is procedurally barred from reaching the merits of petitioner's ineffective assistance of trial counsel claims because the Alabama Court of Criminal Appeals found these claims defaulted since they could have been raised at trial or on appeal but were not. (*Id*. at 11)

      7.     It is clear to the undersigned that Brown has procedurally defaulted his identification and ineffective assistance of trial counsel claims[5]

---

[5]    *See Ex parte Ingram*, 675 So.2d 863, 865-866 (Ala. 1996) ("[I]n any cases in which the defendant is convicted after the date this opinion is released, an ineffective-assistance-of-counsel claim must be presented in a new trial motion filed before the 30-day jurisdictional time limit set by Rule 24.1(b), Ala.R.Crim.P., expires, in order for that claim to be properly

for the reasons previously identified. Certainly, Brown recognized his *O'Sullivan* problem given his petition argument that "[a]ppellate counsel failed to pursue [the identification] claim to [the] Alabama Supreme Court." (Doc. 1, at 3)

       8.     Turning to the issue of cause and prejudice, this Court need find that cause exists for the default of petitioner's identification claim since appellate counsel failed to petition the Alabama Supreme Court for writ of certiorari and did not inform Brown of his right to do so until after the time for filing such petition had passed, that is, after the Alabama Court of Criminal Appeals had issued its final order of affirmance.  Even assuming cause for the petitioner's procedural default of his ineffective assistance of trial counsel claims, however, petitioner would not be entitled to a merits-review of these claims by this Court because he cannot establish prejudice. Specifically, Brown has not established, through citation to applicable case law, that the Alabama Court of Criminal Appeals would have granted his certiorari application and reversed his conviction and sentence on the basis that the trial

---

preserved for review upon direct appeal. When a defendant makes a claim of ineffective assistance of trial counsel, and that claim cannot reasonably be presented in a new trial motion filed within the 30 days allowed by Rule 24.1(b), Ala.R.Crim.P., the proper method for presenting that claim for appellate review is to file a Rule 32, Ala.R.Crim.P., petition for post-conviction relief."); *cf. Boyd v. State*, 913 So.2d 113 (Ala. 2003) (ineffective assistance of trial counsel claims raised on direct appeal).

court should have suppressed both the photographic line-ups and the in-court identifications. In addition, Brown has not shown he was prejudiced by appellate counsel's failure to challenge trial counsel's performance on appeal, inasmuch as he has failed to establish that trial counsel provided constitutionally ineffective assistance.[6]

---

[6] In order to establish a claim of ineffective assistance of counsel, a petitioner is required to show (1) that his attorney's representation fell below "an objective standard of reasonableness" and (2) that a reasonable probability exits that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

In this case, Brown contends that trial counsel: (1) interfered with his Fifth Amendment right to testify at trial; (2) failed to move for a mistrial after the trial court granted a directed verdict of acquittal on the robbery charge; and (3) failed to object to the material variance in the indictment alleging petitioner committed attempted murder pursuant to Alabama Code § 13A-6-2(a)(1) and the proof at trial which was based on Alabama Code § 13A-6-2(a)(3).

Brown cannot establish that his trial attorney's representation fell below "an objective standard of reasonableness" with respect to his second and third claims of attorney error. Petitioner's trial attorney twice moved for a directed verdict of acquittal on the attempted murder charge. This action constitutes a sufficient attack on the only remaining charge against petitioner, particularly in absence of any suggestion by Brown of any basis for a motion for mistrial. In addition, there was no material variance between the contents of the indictment and the proof offered at trial; the indictment charged petitioner with intentional attempted murder which was consistent with the proof offered at trial. Accordingly, there was nothing about the indictment worthy of a challenge by trial counsel.

Turning to the remaining issue, even assuming trial counsel told Brown that he had no constitutional right to testify, petitioner has not established that the result of his trial would have been different had he testified. The jury did not believe Brown's alibi witnesses and petitioner has come forward with no reason why the jury would have credited his testimony more than that of his alibi witnesses.

9.     The fundamental miscarriage of justice/actual innocence exception does not apply in this case because petitioner has not satisfied the *Murray v. Carrier* standard. *Murray v. Carrier*, 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). That standard requires Brown to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." 477 U.S. at 496, 106 S.Ct. at 2649-2650. To be credible, a claim of actual innocence "requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *see also id.* at 327, 115 S.Ct. at 867 ("To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence."). Brown has not come forward with any evidence which establishes his actual innocence and thereby undermines his attempted murder conviction. Accordingly, this case is not one of those rare cases in which the actual innocence exception is applicable.

**B.     Merits Discussion of Collateral Petition Claims**.

10.     Brown filed his petition for writ of habeas corpus relief in this Court on or about September 12, 2006, and therefore, his case is governed by 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act (AEDPA). *Williams v. Taylor*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518, 146 L.Ed.2d 389 (2000); *Bottoson v. Moore*, 234 F.3d 526, 530 (11th Cir. 2000), *cert. denied*, 534 U.S. 956, 122 S.Ct. 357, 151 L.Ed.2d 270 (2001). As amended, § 2254 now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[7]

---

[7]     Based upon the facts as found by the Alabama Court of Criminal Appeals in its decision, it is clear that no argument can be made that the decision of the Alabama Court of Criminal Appeals was based upon an unreasonable determination of the facts in light of the evidence presented to the state courts. More to the point, since this Court must presume as correct the determinations of all factual issues made by the Alabama Court of Criminal Appeals, petitioner simply cannot rebut that presumption of correctness by clear and convincing evidence. The appellate court's findings are based upon what a reasonable jury could have found the evidence to be.

28 U.S.C. § 2254(d)(1) & (2) (footnote added). Moreover, the Act, as amended, presumes as correct all determinations of factual issues made by a State court and places the burden upon the petitioner of rebutting such a presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).

11.     In *Williams v. Taylor, supra*, the Supreme Court held that § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied— the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ

if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. *Id.* at 412-413, 120 S.Ct. at 1523; *see Bottoson, supra*, 234 F.3d at 531 ("In addition, a state court decision involves an unreasonable application of Supreme Court precedent 'if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'").

12.     In this case, the Alabama Court of Criminal Appeals effectively reached the merits of two of the issues petitioner raised in his collateral attack on his conviction and sentence, specifically, his ineffective assistance of appellate counsel claims and his material variance claim. Brown cannot establish his entitlement to relief under § 2254(d)(1) & (d)(2) with respect to either of these issues. In this regard the undersigned notes generally that petitioner has not and cannot show, under the "contrary to" clause, that the Alabama Court of Criminal Appeals, arrived at any conclusions opposite to those reached by the Supreme Court of the United States on any question of law or decided the case differently than the Supreme Court did in a previous case presenting a set of materially indistinguishable facts.  Moreover, as

indicated above, under the "unreasonable application" clause, petitioner has not and cannot establish that the Alabama Court of Criminal Appeals, though recognizing the correct governing principles from the Supreme Court's decisions, unreasonably applied those principles to the facts in this case. Here, the Alabama Court of Criminal Appeals, in its decision on collateral review, recognized the applicability of *Strickland v. Washington, supra*, to petitioner's claims of ineffective assistance of appellate counsel, and reasonably applied the principles outlined in that case to the facts of petitioner's case in finding that counsel did not provided constitutionally ineffective assistance on appeal.

13.    Turning to the remaining ground of the instant petition that was addressed by the Alabama Court of Criminal Appeals on collateral review, specifically his fatal variance claim, the undersigned would note that the federal law applicable to this claim is that set forth by the Eleventh Circuit in *Thompson v. Nagle*, 118 F.3d 1442 (11th Cir. 1997), *cert. denied*, 522 U.S. 1125, 118 S.Ct. 1071, 140 L.Ed.2d 130 (1998).

An accused has a constitutional right to an indictment which puts him on notice of the case the prosecution will present at trial.  *See Kotteakos vs. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946); *United States v. Peel*, 837 F.2d 975, 976-77 (11th Cir. 1988); *Ex parte Washington*, 448 So.2d 404, 408 (Ala. 1984).  The rationale behind the rule prohibiting material variances between indictments and proof at trial is two-fold.  Most importantly, the rule insures "that the accused shall

32

> be definitely informed as to the charges against him, so that he
> may be enabled to present his defense and not be taken by
> surprise by the evidence offered at the trial." *Berger v. United
> States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314
> (1935). Secondly, the rule protects the accused against
> subsequent prosecutions for the same offense. *Id.* The Eleventh
> Circuit has established a two-step inquiry when considering
> allegations of variance between indictments and proof at trial.
> "First, we must determine whether a material variance did
> indeed occur; and second, whether [the defendant] suffered
> substantial prejudice as a result of the variance." *United States
> v. Starrett*, 55 F.3d 1525, 1553 (11th Cir. 1995) (citations
> omitted), *cert. denied*, *Sears v. United States*, 517 U.S. 1111,
> 116 S.Ct. 1335, 134 L.Ed.2d 485 (1996).

*Id.* at 1453. While the Alabama Court of Criminal Appeals did not mention

*Thompson v. Nagle*, or any comparable case, in its analysis of Brown's claim

that there was a material variance between the indictment and proof offered at

trial, recognition by the appellate court of the proper analysis is clear from the

entirety of its discussion of Brown's fatal variance argument. (*See* Doc. 8,

Exhibit K, at 6 ("There is no merit to this claim. The record in Brown's direct

appeal indicates that Brown shot the intended victim in the back as he

attempted to run away. Contrary to Brown's contention, the evidence at trial

established the offense of attempted intentional murder, as alleged in the

indictment.")[8]) Therefore, the undersigned simply cannot find that the state

---

[8]        This analysis by the Alabama Court of Criminal Appeals comports with the first
step of the two-step inquiry set out in *Thompson v. Nagle, supra*. In other words, the Alabama
Court of Criminal Appeals found no material variance. As heretofore indicated, the undersigned

court adjudication was contrary to such law nor can it be found that the state court unreasonably applied relevant precedent. Moreover, it is not debatable among reasonable jurists that the result of which petitioner complains is incorrect. Stated differently, it is not debatable among reasonable jurists that the appellate court's rejection of petitioner's fatal variance argument is inherently incorrect.

## **CONCLUSION**

The Magistrate Judge is of the opinion that petitioner's rights were not violated in this cause and that his request for habeas corpus relief should be denied.

The attached sheet contains important information regarding objections

---

can find no material variance. The Alabama Court of Criminal Appeals is absolutely correct that the indictment charged Brown with attempted intentional murder (*see* Doc. 9, Exhibit A, Attempted Murder Indictment ("Otis Alonzo Brown . . . did, with the intent to cause the death of **Ralph Houston**, a violation of § 13A-6-2 of the Code of Alabama, attempt to cause the death of **Ralph Houston**, by **shooting him with a gun**, in violation of § 13A-4-2 of the Code of Alabama[.]")); the proof offered at trial was consistent with this indictment (*compare id. with* Trial Transcript).

to the report and recommendation of the Magistrate Judge.

**DONE** this the 14th day of September, 2007.

 s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
<u>FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>**

l.      ***Objection***.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

        A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      ***Transcript (applicable Where Proceedings Tape Recorded)***.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

  s/WILLIAM E. CASSADY
UNITED STATES MAGISTRATE JUDGE